## STONEMETZ v. GALLAGHER.

No. 7497—Opinion Filed June 6, 1916.

Rehearing Denied June 27, 1916.

Motion to Modify Denied September 19. 1916.

(158 Pac. 385.)

**Attachment—Wrongful Attachment—Theft of Property—Liability of Attaching Plaintiff.**

Where a sheriff seizes and takes into his possession personal property under an order of attachment wrongfully obtained at the commencement of an action and later dissolved, and a portion of such property is stolen while under control of the sheriff, but without his fault, held, that the plaintiff who procured the issuance and levy of such order of attachment is liable for the damage resulting from the theft, and that the rejection of evidence offered to establish such theft and consequent damage constitutes prejudicial error.

(Syllabus by Bleakmore, C.)

Error from County Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Annie Gallagher against George Stonemetz. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Merwine & Newhouse, for plaintiff in error.

Cochran & Ellison, for defendant in error.

Opinion by BLEAKMORE, C. This action was begun in the county court of Okmulgee county, subsequent to the taking effect of section 4856, Revised Laws 1910, by Annie Gallagher as plaintiff against George Stonemetz as defendant to recover a balance unpaid on the purchase price of certain personal property, and the value of. a portion of the crops produced by defendant on the lands of the plaintiff under a contract as her tenant, etc. At the commencement of the action, plaintiff caused an order of attachment to be issued and levied upon 1,700 bushels of oats in the possession of defendant. On motion of defendant, the attachment was subsequently dissolved. Thereafter the petition was amended in certain unimportant particulars. Defendant answered admitting the possession of the property, and averring the amount he had agreed to pay therefor, admitting renting the lands of the plaintiff, and agreeing to pay therefor one-third of the crops produced thereon during the year 1914; and alleged that he had rented 160 acres of lands for agricultural purposes, one-half of which was in cultivation and especially adapted to the production of oats; that, before he could plant such crop thereon, plaintiff refused to permit him the use thereof, but contracted and agreed to pay him whatever sum the said 80 acres of land would be worth to him for the crop season, and that plaintiff took possession, and used the same for oil and gas development purposes; that said 80 acres of land was worth $7.50 per acre to him for the purpose of raising a crop of oats thereon, and by reason of his being deprived of the use thereof he was damaged in the sum of $560; that plaintiff was indebted to him for improvements placed upon the premises at her request, and also on account of board; that by reason of the unlawful issuance and levy of the attachment he was compelled to incur certain expenses in the employment of counsel; and by paragraph 4 of the answer alleged that the oats attached under the direction of plaintiff were in the custody of the sheriff, and 626 bushels thereof, valued at $1.45 cents per bushel, were stolen; that he was entitled to punitive damages in the sum of $100, and prayed for judgment against plaintiff in the sum of $748.

Upon trial to a jury, judgment was rendered for plaintiff in the sum of $313.15. The court gave certain instructions to the jury, none of which were excepted to at the time; and, under the established rule in this jurisdiction, such instructions are not properly subject to review in this proceeding. The defendant requested the giving of the following instruction:

"The defendant in his cross-petition in this action charges that he leased of plaintiff the northwest quarter of section 3, township 13 north, range 14 east in Okmulgee county, Okla., for the year 1914, and that, before defendant could place a crop thereon, the plaintiff refused to permit a crop of oats to be placed thereon, and promised to and with him that plaintiff would pay defendant whatever sum the south 80 acres thereof would be worth to him for that season for such crop. If you find from the evidence that plaintiff did so agree to and with the defendant, and that plaintiff refused to allow defendant to place such crop thereon, and used the same for the purpose of prospecting and drilling for oil and gas, then your verdict will be for the defendant and against the plaintiff on this claim; and, in determining the amount that defendant should recover from the plaintiff, you will take into consideration the testimony of all the witnesses as to the value of this 80-acre tract to the defendant, for the purpose of a crop thereon for said season of 1914, and assess the amount thereof."

In this regard the court charged the jury as follows:

"You are instructed that, before the defendant can be entitled to any award of damages at your hands for being deprived of a portion of the premises rented by him on account of actual or contemplated oil development, he must have proven to your satisfaction by a fair preponderance of the evidence that his right to possession was exclusive, superior and not subject to such development.

"You are instructed that, in the event you find the defendant entitled under these instructions to damages on account of having been deprived of a portion of the premises rented by him from the defendant, you will assess his damages at the difference, if any, between the contract price and the reasonable market rental value of the premises at the time of eviction, provided you find the contract price to have been less than the market rental value; and in this connection you are instructed to disregard any and all evidence as to what the land would have been worth to the defendant for the period."

It is contended by defendant that the charge of the court on the measure of damages was prejudicially erroneous as to him, and that there was error in the refusal of the court to instruct the jury as requested, in that the measure of his damages for the loss of the 80 acres of land for the crop season was fixed by the contract of the par-

ties at the time he was denied the use thereof; such damages being not the difference between the rent reserved and the reasonable rental value of the premises, as stated in the instructions given, but the actual value of the land to him for the purpose of producing a crop of oats thereon in that particular year. To establish the agreement in the contract in this regard, defendant testified on direct examination to a conversation with the husband of plaintiff in February, 1914, as follows:

"A. And, after dinner, he said 'I don't want you to put a thing in that south 80. We want to drill that up.' I told him it was pretty hard on me to give that up that time of year. 'Oh, well,' he said, 'I will pay you for all the damage that does you. You will not lose anything by that. I will make that right with you.' "

And on cross-examination he testified:

"Q. Why did you stay off that land? A. They told me to, and told me they would pay me for it. Q. You had it leased? A. Yes, sir. Q. How much did they tell you they would pay you for it? A. What it was worth. Q. Who told you that? A. Gallagher."

We are of opinion that there was no error in the refusal of the trial court to give the requested instructions, supra.

Defendant complains of the action of the court in rejecting the following offer of evidence relative to his claim for damages on account of the theft of a portion of the oats attached, prior to the dissolution of the attachment. Upon the trial the following proceedings were had:

"A. Why, the sheriff attached my oats. Q. Where was the oats when it was attached? A. In an old house over on this 40 of 34.

"At this point, the plaintiff objects to any testimony being introduced with reference to the allegations set forth in the cause of action, beginning with paragraph No. 4, in the amended and supplemental cross-petition of defendant, Stonemetz, for the reason same does not state facts sufficient to constitute a cause of action. (Jury is excluded from the room while the argument on objection is had. Objection is by the court sustained, to which ruling the defendant excepts.)

"Defendant now offers to further prove by the witness the facts set forth in the fourth cause of action of the cross-petition, that the sheriff took possession of 626 bushel of oats belonging to the defendant; that the attachment was issued upon the affidavit of the plaintiff; that the court in this action had dissolved the attachment as unlawful and set aside the attachment proceedings; and that, between the time of the seizure or attachment and the dissolution of the attachment by this court, the oats were not in the custody of the sheriff nor in the plaintiff, and had been taken away by some one unknown to the defendant, plaintiff, or the sheriff. (To the introduction of which testimony plaintiff objects for the reason that same is incompetent, irrelevant, and immaterial. Objection is by the court sustained, to which ruling of the court, in refusing to allow said testimony to be offered, defendant excepts.)"

We are of opinion that the rejection of such evidence constituted prejudicial error.

The evidence disclosed that the sheriff executed the order of attachment by levying on certain oats, the property of defendant; and by the statute (section 4820, Rev. Laws 1910), he was enjoined to take such property into his custody and hold it subject to the order of the court. Section 4855, Rev. Laws 1910, provides that if the attachment be discharged on motion prior to final judgment (as was done in this case), the defendant may upon proper answer recover his damages as in other cases for unlawful attachment.

In Overton v. Sigmund Furniture Mfg. Co. et al., 50 Okla. 531, 151 Pac. 215, it is held:

"An action at common law may be maintained for wrongful attachment against the plaintiff therein when the attachment is sued out maliciously and without probable cause, in which case, if the pleadings and evidence warrant it, both actual and punitive or exemplary damages may be recovered.

"(a) In such case, by reason of section 4070, St. 1893 (section 4814, Rev. Laws 1910), actual damages only may be recovered for the mere wrongfulness of the attachment and without regard to either malice or probable cause."

"Actual damages only for mere wrongful attachment may be recovered in an action against the plaintiff therein, independent of the undertaking required by section 4070, St. 1893 (section 4814, Rev. Laws 1910), and without allegation or proof that the same was sued out maliciously or without probable cause."

As an element of the damage alleged in his answer to have been sustained by reason of the unlawful attachment, defendant offered to prove the theft of a portion of his property seized by the sheriff under the order of attachment after the same had been taken into the custody of such officer. Whether or not the theft of the attached property was attributable to the lack of vigilance on the part of the sheriff, for which he might be responsible, is immaterial here, as he is not a party to this proceeding. The only question with which we are concerned goes to the liability of the plaintiff who wrongfully obtained the order of attachment.

In Stanley v. Carey, 89 Wis. 410, 62 N. W. 188, a case in which the writ of attachment

was wrongfully obtained, and where property seized thereunder, while in the custody of the sheriff but without his fault, was destroyed by fire, the attaching plaintiff was held liable for the damage thus incurred. We adopt the forceful and convincing language of the Supreme Court of Wisconsin as establishing the rule which should govern such cases in this jurisdiction:

"It is, of course, very certain that, had the plaintiff directed the sheriff without any writ to seize and hold the defendants' property, he would have been liable for its return or, in default thereof, for its full value from the moment of its seizure. The plaintiff did, in effect, direct the officer to seize the property when he caused the writ of attachment to be issued. It follows logically that if the plaintiff be protected from the legal consequences of his act it must be by virtue of the writ of attachment, and this in fact is the plaintiff's contention. But this is surely an anomaly. It has been conclusively determined that there was no fact existing for the attachment. It is true a sufficient affidavit was made, and the writ was issued under the forms of law, and so it protects the officer in his acts; but it is also true that as a matter of fact there was no cause existing which authorized an attachment. The plaintiff's position is substantially this: He admits that he caused the property to be taken from the defendants when no fact existed which authorized such taking; but he says that, having taken the precaution to make a certain statement to the court that such cause did exist, he is now protected from the consequences of his own act, because the court acted on his untrue statement. Does not this come very near being a claim that he is protected by his own wrong? Is he not bound to know, when he sues out the attachment, whether the facts exist which authorize it, and does he not act at his peril? When the fact is established that no foundation for the attachment existed, does it not follow logically that the plaintiff was a wrongdoer from the beginning? We have been unable to find authorities bearing directly on this question, although it seems certain that it must have arisen many times before; but analogous questions have been frequently passed upon. Thus it has been held that, if an execution be issued on a judgment which has been discharged by insolvency proceedings, trespass will lie against the party who caused its issuance, even though the execution be regular on its face and thus a protection to the officer, and this will be the case although the party had no notice of the discharge. The party is bound to know, at his peril, whether there was a judgment to warrant the execution. Deyo v. Van Valkenburgh, 5 Hill [N. Y.] 242; Breck v. Blanchard, 20 N. H. 323 [51 Am. Dec. 222]. It is difficult to see where the analogy fails between such a case and the one at bar. There is in each case a valid writ protecting the officer. There is also in each case an apparent ground upon which to base the writ, but no real ground.

"Again, it is well settled that if the writ of attachment be irregularly issued, though it is valid on its face and a protection to the officer, still it is (after being set aside) no protection to the party, who becomes a trespasser ab initio. Drake, Attachm. (7th Ed.) § 185b, and authorities cited. In such a case, the writ fails to protect the party because of some defect in the preliminary steps. It never should have been issued at all, because the proper steps were never taken to authorize its issuance. So, in the present case, the writ never should have been issued at all, because the ground for its issuance did not in fact exist. If, for mere irregularities in the issuance of the writ a party is held liable as a trespasser ab initio, for a stronger reason it would seem that, when a writ is issued without facts to warrant the remedy, the party who procures its issuance should be so liable. This is not a case where a party has acted under an order or judgment of the court which has afterwards been set aside for error. It has been held that a party is protected in acting under such an order or judgment, because the error is the error of the court, for which he cannot be held responsible; whereas he is held liable when acting under an irregular judgment, because he is responsible for the irregularities. Simpson v. Hornbeck, 3 Lans. [N. Y.] 54; Williams v. Smith, 108 E. C. L. 596, 622, 625. Applying that principle to this case, the attachment failed, not on account of any error of the court in its issuance, but because the party failed to prove the facts which he took the burden of establishing when he sued out the writ. The responsibility rested, not on the court, but, as in the case of an irregularity, upon the party. We feel compelled to hold, therefore, that the plaintiff when he sued out his writ took the risk to be able to substantiate the facts set forth in his affidavit, and, failing so to do, became liable as a wrongdoer from the beginning. The court should have entered judgment for the value of the attached property which was destroyed by fire while in the possession of the officer."

See, also, Corpus Juris, § 830, and cases cited.

It follows that the judgment should be reversed and the cause remanded.

By the Court: It is so ordered.